# CONDITIONAL SALES SECURITY AND FEDERAL
## TRUTH IN LENDING DISCLOSURE STATEMENT

Dealer (Seller): **It's All Good Auto Sales, Inc. • 2944 South Third St. • Memphis, TN 38109**
(Dealer's Name)

hereby sells and Buyer(s) __Oneisha S Harvey  3513 Blackberry Bush #3__
(Buyer's Name)                                 (Street & Number)

__MEMPHIS   TN   38115__                                              (hereinafter, whether one or more jointly called "Buyer"),
(City, State, and Zip Code)

hereby buys, subject to the terms and conditions hereinafter set forth, the following described motor vehicle, together with the accessories and equipment
thereon (therein called "the vehicle"), for the time price hereinafter stated, delivery and acceptance as is, which as is, hereby acknowledged by Buyer.

| USED | NO. CYL. | YEAR | MAKE   | BODY TYPE | VEHICLE IDENTIFICATION NO. | MODEL  |
|------|----------|------|--------|-----------|----------------------------|--------|
| USED |          | 2002 | NISSAN | 4D SEDAN  | 1N4AL11E22C169732          | ALTIMA |

1. Cash Price ............................................................................................................ $ 8995.00
2. Cash Down Payment ........................................................... $ 2000.00
3. Gross Trade In $ __0.00__ less lien $ __0.00__ Net $ __0.00__
4. Deferred Down Payment (No finance Charge) Due *SEE BELOW SCHEDULE FOR PMT$DATE*  $ 1230.00
5. Total Down Payment ............................................................................................. $ 3230.00

Itemization of amount financed:

6. Balance of Cash Price ........................................................................................... $ 5765.00
7. Sales Tax .............................................................................................................. $ 732.40
8. Official Fees ......................................................................................................... $ 0.00
9. Other Charges .......................................................................... Doc. Fees $ 325.00
10. Amount Financed ................................................................................................. $ 6822.40

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled. | TOTAL SALE PRICE The total cost of your purchase on credit, including your downpayment of $ 3230.00 |
|---|---|---|---|---|
| 26.000 % | $ 3615.94 | $ 6822.40 | $ 10438.34 | $ 13668.34 |

Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments are Due (Mo., Wk., etc.) | Beginning Date |
|---|---|---|---|
| 37 | 275.00 | MONTHLY | 12/23/11 |
| 1  | 263.34 | 365.00 ON 11/23/2011  365.00 ON 11/23/2011 N/A | 01/23/15 |
|    |        | 500.00 ON 10/21/2011  N/A |  |

INSURANCE - Credit life insurance and credit disability insurance are not required and shall not be a part of this contract. You may obtain property insurance from anyone you want that is acceptable to (Dealer) _____

SECURITY - The Buyer grants the Seller a security interest in the herein described motor vehicle, and agrees that the legal title shall remain in the Seller until all payments provided for in this contract are paid including any deferred down payment.

Prepayment if you pay off early, you
☐ may   ☒ will not   have to pay a penalty.
☐ may   ☒ will not   be entitled to a refund of part of the finance charge.

See your contract documents for any additional information about nonpayment, default, any required repayments in full before the scheduled date, and prepayment refunds and penalties.

NOTICE : ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

*Payments shall be made at the office of the Seller or where designated.*

THIS VEHICLE IS SOLD AS IS. THERE ARE NO WARRANTIES WITH RESPECT TO THE VEHICLE, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR OTHERWISE WHICH EXTEND BEYOND THE FOREGOING DESCRIPTION OF THE VEHICLE. THIS AGREEMENT IS SUBJECT TO ALL OF THE ADDITIONAL REPRESENTATIONS, WARRANTIES, WAIVERS, AGREEMENTS AND PROVISIONS SET FORTH ON THE REVERSE SIDE HEREOF, ALL OF WHICH ARE AN INTEGRAL PART OF THIS CONTRACT.

THIS CONTRACT made and executed by the Seller and the Buyer in __Memphis, TN__

this __03__ day of __OCTOBER__, __2011__

_____                    __Oneisha Harvey__
It's All Good Auto Sales, Inc.                              BUYER
SELLER                                                                  _____
                                                                                 BUYER

BUYER ACKNOWLEDGES RECEIPT AND REVIEW OF A COPY OF THIS CONTRACT INCLUDING THE PROVISIONS CONTAINED ON THE FRONT AND ON THE REVERSE SIDE.

- ADDITIONAL CONTRACTUAL PROVISIONS ON BACK -

## ADDITIONAL CONTRACTUAL PROVISIONS

1. Time is of the essence of this contract and should the Buyer default under the terms hereof, the Seller at its option may immediately declare the entire balance due and payable, if assigned to a lawyer for collection for any legal action, the Buyer agrees to pay a reasonable attorney's fee which shall in no event be less than $35.00. Buyer hereby agrees that should he default under the terms hereof, the Seller shall have the right, at the Seller's option, to immediately repossess the aforedescribed motor vehicle and in doing so, its agents, successors and assignees may enter into and upon any place, private or public, and take immediate possession of the whole or any part of the collateral without this action in any manner constituting a trespass. Buyer agrees to pay any and all expenses incurred by seller in the event of repossession of the vehicle. This shall apply even if the vehicle is returned to buyer by agreement of the parties.

2. Buyer has a right to prepay this contract at any time. The law of Tennessee does not require any refund of finance charges where the sale of an automobile is involved. Any refund that might be allowed would merely be a business policy of the seller or the seller's assignee.

3. In the event of a default and a resulting repossession, the Seller shall resell the motor vehicle at either public or private sale in accordance with Tennessee law. After deduction of all legal fees and expenses, the balance remaining shall be applied to the purchase price hereof and if a balance remains due, the Buyer shall pay same with legal interest. Should a surplus result, the Seller shall pay same to the Buyer.

4. The acceptance of any payment(s) after maturity or acceptance of a partial payment(s) or waiver or condonation of any other breach or default under this contract shall not be held to establish a custom nor constitute a waiver of any other or subsequent breach or default and shall not prevent Seller from immediately pursuing, without any notice to Buyer, and at any time after default, any or all of its remedies. The Seller shall have the right to enforce one or more remedies hereunder, successively or concurrently, all rights being cumulative and not alternative. Any action to enforce payment of said note shall not waive any rights of the Seller, hereunder.

5. This contract covers all agreements between the parties and no warranties, express or implied, representation, promises, or statements have been made by the Seller unless entered and endorsed hereon in writing, and none of same shall be binding upon the Seller or, any assignee unless so entered; none of the agents of said Seller have authority to act contrary to this provision.

6. The Buyer shall keep said property free of all taxes, liens and encumbrances; shall not use the same illegally, improperly or for hire; shall not remove same from the state or county in which delivered, without the written permission of the Seller; shall not tranfer any interest in this contract or said property.

7. Any sum of money paid by the Seller to discharge taxes, liens, and encumbrances on said property shall be secured by and under this contract. The proceeds of any insurance shall be applied toward the replacement of the property or payment of this obligation at the option of the Seller, and Seller is granted a security interest in any insurance claim buyer may possess as a result of damage to the motor vehicle.

8. This contract shall bind and inure to the benefit of the heirs, executors, administrators, successors and assigns of all parties hereto. The term Seller shall include persons or parties to whom Seller's title and rights under this contract may be assigned. Wherever necessary herein, the singular number shall apply to the plural, and likewise the plural to the singular.

9. Buyer or one of them, if there be more than one, shall apply for a certificate of title to said motor vehicle and in his application therefore disclose the lien of this Security Agreement. Such application shall be made in not less than ten (10) days after necessary documents are obtained and Buyer so notified. Failure to do so shall constitute a material default.

10. Any Notice to Debtor shall be sufficiently given if mailed by ordinary United States mail to Debtor's address as shown herein.

11. Should any insolvency or bankruptcy proceeding be filed by or against the Buyer, same shall constitute a default hereunder. Any actions by the Buyer placing the chattel in jeopardy or making it subject to any liens, confiscation proceedings, transfer or encumbrances shall constitute a default hereunder.

12. Buyer authorizes Secured Party to release to credit bureaus, credit interchanges and other granters of credit such information relating to this transaction and Buyer's credit-worthiness as may be determined pertinent by Secured Party.

13. Buyer authorizes Seller to communicate with Buyer or any person or corporation or governmental agency in connection with or during the pendency of the credit for purposes of extension or review or collection of same and further credit/extension solicitation.

14. Buyer shall obtain and maintain at Buyer's expense so long as any amount remains unpaid hereunder, insurance reasonably protecting the interest of Buyer and Secured Party against loss, damage or destruction of/or to the collateral securing this obligation, in such forms and amounts as Secured Party may legally require. Buyer assigns to Secured Party the proceeds of all such insurance to the extent of the unpaid balance hereunder and said insurance policy shall contain a loss payable clause which shall cause the proceeds so assigned to be paid directly to Secured Party as interest appears. If Buyer fails to obtain or maintain such insurance or fails to furnish satisfactory evidence thereof upon request, Secured Party, as agent but not as principal, is authorized but shall not be obligated to obtain such insurance. In such event Buyer agrees to reimburse Secured Party for the reasonable cost thereof forthwith upon demand together with interest thereon at the highest lawful rate. Upon any default of the provisions of this combined agreement Secured Party may cancel such insurance and is authorized to credit any refund and unearned premiums to the unpaid balance of the indebtedness and to the extent not prohibited by law, Buyer authorizes Secured Party to execute any draft pertaining to same.

15. Buyer is precluded from making claim for any property in the vehicle if repossessed unless Secured Party is notified of such claim by registered mail within 5 days of repossession. Such notice shall list the items claimed to have been in the vehicle with a statement of value placed on each item. Proof of ownership shall be provided. Secured Party shall mail buyer a statement within 5 days after notice is received advising buyer where to redeem the property. The statement shall be mailed to the address shown on the registered mail notice or if none is shown to buyer's last known address. Buyer shall redeem the property during regular business hours within 7 days after statement is mailed by Secured Party. Secured Party may store such items in a public warehouse and buyer shall be liable for all storage charges accruing after the statement had been mailed for 7 days. Buyer assumes the responsibility for any third parties who may make claims for chattels in the repossessed vehicle and shall hold Secured Party harmless from claims made by such third parties.

# CONDITIONAL SALES SECURITY AND FEDERAL
## TRUTH IN LENDING DISCLOSURE STATEMENT

Dealer (Seller) **It's All Good Auto Sales, Inc. • 2944 South Third St. • Memphis, TN 38109**
(Dealer's Name) (Street & Number)

hereby sells and Buyer(s) **ONEISHA HARVEY 4493 QUAIL RIDGE TRAIL**
(Buyer(s) Name)

**MEMPHIS TN 38141** (hereinafter, whether one or more jointly called "Buyer"),
(City, State, and Zip Code)

hereby buys, subject to the terms and conditions hereinafter set forth, the following described motor vehicle, together with the accessories and equipment thereon (therein called "the vehicle"), for the time price hereinafter stated, delivery and acceptance as is, which as is hereby acknowledged by Buyer.

| USED | NO.CYL. | YEAR | MAKE | BODY TYPE | VEHICLE IDENTIFICATION NO. | MODEL |
|---|---|---|---|---|---|---|
| USED | | 2004 | CHEVROLET | 4D SEDAN | 1G1JC52F847292237 | CAVALIER |

| | | |
|---|---|---|
| 1. Cash Price | | $ 6995.00 |
| 2. Cash Down Payment | $ 1500.00 | |
| 3. Gross Trade In $ 0.00 less lien $ 0.00 Net $ | 0.00 | |
| 4. Deferred Down Payment (No finance Charge) Due *(SEE BELOW SCHEDULE FOR PMT/DATE)* $ | 590.00 | |
| 5. Total Down Payment | $ 2090.00 | $ 2090.00 |
| Itemization of amount financed: | | |
| 6. Balance of Cash Price: | | $ 4905.00 |
| 7. Sales Tax | | $ 588.20 |
| 8. Official Fees | | $ 0.00 |
| 9. Other Charges Doc. Fees | $ 265.00 | |
| 10. Amount Financed | | $ 5758.20 |

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled. | TOTAL SALE PRICE The total cost of your purchase on credit, including your downpayment of $ 2090.00 |
|---|---|---|---|---|
| 26.000 % | $ 2558.90 | $ 5758.20 | $ 8317.10 | $ 10407.10 |
| | $ 6295 | $ 3/30/11 | $ 6295 4/13/10 | |
| | 67.10 | ON 05/02/2011 | 295.00 ON 04/15/2011 N/A N/A | |

Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments are Due (Mo., Wk., etc.) | Beginning Date |
|---|---|---|---|
| 33 | 250.00 | MONTHLY | 05/15/11 |
| 1 | 67.10 | | 02/15/14 |

INSURANCE - Credit life insurance and credit disability insurance are not required and shall not be a part of this contract. You may obtain property insurance from anyone you want that is acceptable to (Dealer) _____

SECURITY - The Buyer grants the Seller a security interest in the herein described motor vehicle and agrees that the legal title shall remain in the Seller until all payments provided for in this contract are paid including any deferred down payment.

Prepayment if you pay off early, you
☐ may ☒ will not have to pay a penalty.
☐ may ☒ will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information about nonpayment, default, any required repayments in full before the scheduled date, and prepayment refunds and penalties.

NOTICE : ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

*Payments shall be made at the office of the Seller or where designated.*

THIS VEHICLE IS SOLD AS IS. THERE ARE NO WARRANTIES WITH RESPECT TO THE VEHICLE, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR OTHERWISE WHICH EXTEND BEYOND THE FOREGOING DESCRIPTION OF THE VEHICLE. THIS AGREEMENT IS SUBJECT TO ALL OF THE ADDITIONAL REPRESENTATIONS, WARRANTIES, WAIVERS, AGREEMENTS AND PROVISIONS SET FORTH ON THE REVERSE SIDE HEREOF, ALL OF WHICH ARE AN INTEGRAL PART OF THIS CONTRACT.

THIS CONTRACT made and executed by the Seller and the Buyer in **Memphis, TN**

this **16** day of **MARCH** **2011**

It's All Good Auto Sales, Inc.
SELLER                                          BUYER
                                                BUYER

BUYER ACKNOWLEDGES RECEIPT AND REVIEW OF A COPY OF THIS CONTRACT INCLUDING THE PROVISIONS CONTAINED ON THE FRONT AND ON THE REVERSE SIDE.

- ADDITIONAL CONTRACTURAL PROVISIONS ON BACK -

## ADDITIONAL CONTRACTUAL PROVISIONS

1. **Time is of the essence of this contract** and should the Buyer default under the terms hereof, the Seller at its option may immediately declare the entire balance due and payable. If assigned to a lawyer for collection or for any legal action, the Buyer agrees to pay a reasonable attorney's fee which shall in no event be less than $35.00. Buyer hereby agrees that should he default under the terms hereof, the Seller shall have the right, at the Seller's option, to immediately repossess the aforedescribed motor vehicle and in doing so, its agents, successors and assignees may enter into and upon any place, private or public, and take immediate possession of the whole or any part of the collateral without his action in any manner constituting a trespass. Buyer agrees to pay any and all expenses incurred by seller in the event of repossession of the vehicle. This shall apply even if the vehicle is returned to buyer by agreement of the parties.

2. Buyer has a right to prepay this contract at any time. The law of Tennessee does not require any refund of finance charges where the sale of an automobile is involved. Any refund that might be allowed would merely be a business policy of the seller or the seller's assignee.

3. In the event of a default and a resulting repossession, the Seller shall resell the motor vehicle at either public or private sale in accordance with Tennessee law. After deduction of all legal fees and expenses, the balance remaining shall be applied to the purchase price hereof and if a balance remains due, the Buyer shall pay same with legal interest. Should a surplus result, the Seller shall pay same to the Buyer.

4. The acceptance of any payment(s) after maturity or acceptance of a partial payment(s) or waiver or condonation of any other breach or default under this contract shall not be held to establish a custom nor constitute a waiver of any other or subsequent breach or default and shall not prevent Seller from immediately pursuing, without any notice to Buyer, and at any time after default, any or all of its remedies. The Seller shall have the right to enforce one or more remedies hereunder, successively or concurrently, all rights being cumulative and not alternative. Any action to enforce payment of said note shall not waive any rights of the Seller, hereunder.

5. This contract covers all agreements between the parties and no warranties, express or implied, representation, promises, or statements have been made by the Seller unless entered and endorsed hereon in writing, and none of same shall be binding upon the Seller or any assignee unless so entered; none of the agents of said Seller have authority to act contrary to this provision.

6. The Buyer shall keep said property free of all taxes, liens and encumbrances; shall not use the same illegally, improperly or for hire; shall not remove same from the state or county in which delivered, without the written permission of the Seller; shall not tranfer any interest in this contract or said property.

7. Any sum of money paid by the Seller to discharge taxes, liens, and encumbrances on said property shall be secured by and under this contract. The proceeds of any insurance shall be applied toward the replacement of the property or payment of this obligation at the option of the Seller, and Seller is granted a security interest in any insurance claim buyer may possess as a result of damage to the motor vehicle.

8. This contract shall bind and inure to the benefit of the heirs, executors, administrators, successors and assigns of all parties hereto. The term Seller shall include persons or parties to whom Seller's title and rights under this contract may be assigned. Wherever necessary herein, the singular number shall apply to the plural, and likewise the plural to the singular.

9. Buyer or one of them, if there be more than one, shall apply for a certificate of title to said motor vehicle and in his application therefore disclose the lien of this Security Agreement. Such application shall be made in not less than ten (10) days after necessary documents are obtained and Buyer so notified. Failure to do so shall constitute a material default.

10. Any Notice to Debtor shall be sufficiently given if mailed by ordinary United States mail to Debtor's address as shown herein.

11. Should any insolvency or bankruptcy proceeding be filed by or against the Buyer, same shall constitute a default hereunder. Any actions by the Buyer placing the chattel in jeopardy or making it subject to any liens, confiscation proceedings, transfer or encumbrances shall constitute a default hereunder.

12. Buyer authorizes Secured Party to release to credit bureaus, credit interchanges and other granters of credit such information relating to this transaction and Buyer's credit-worthiness as may be determined pertinent by Secured Party.

13. Buyer authorizes Seller to communicate with Buyer or any person or corporation or governmental agency in connection with or during the pendency of the credit for purposes of extension or review or collection of same and further credit extension solicitation.

14. Buyer shall obtain and maintain at Buyer's expense so long as any amount remains unpaid hereunder, insurance reasonably protecting the interest of Buyer and Secured Party against loss, damage or destruction of/or to the collateral securing this obligation, in such forms and amounts as Secured Party may legally require. Buyer assigns to Secured Party the proceeds of all such insurance to the extent of the unpaid balance hereunder and said insurance policy shall contain a loss payable clause which shall cause the proceeds so assigned to be paid directly to Secured Party as interest appears. If Buyer fails to obtain or maintain such insurance or fails to furnish satisfactory evidence thereof upon request, Secured Party, as agent but not as principal, is authorized but shall not be obligated to obtain such insurance. In such event Buyer agrees to reimburse Secured Party for the reasonable cost thereof forthwith upon demand together with interest thereon at the highest lawful rate. Upon any default of the provisions of this combined agreement Secured Party may cancel such insurance and is authorized to credit any refund and unearned premiums to the unpaid balance of the indebtedness and to the extent not prohibited by law, Buyer authorizes Secured Party to execute any draft pertaining to same.

15. Buyer is precluded from making claim for any property in the vehicle if repossessed unless Secured Party is notified of such claim by registered mail within 5 days of repossession. Such notice shall list the items claimed to have been in the vehicle with a statement of value placed on each item. Proof of ownership shall be provided. Secured Party shall mail buyer a statement within 5 days after notice is received advising buyer where to redeem the property. The statement shall be mailed to the address shown on the registered mail notice or if none is shown to buyer's last known address. Buyer shall redeem the property during regular business hours within 7 days after statement is mailed by Secured Party. Secured Party may store such items in a public warehouse and buyer shall be liable for all storage charges accruing after the statement had been mailed for 7 days. Buyer assumes the responsibility for any third parties who may make claims for chattels in the repossessed vehicle and shall hold Secured Party harmless from claims made by such third parties.